UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ROBYN N.,[1]                                                    Case No. 6:20-cv-01987-MK

                         Plaintiff,                              **OPINION
                                                                 AND ORDER**

          v.

COMMISSIONER, Social Security
Administration,

                         Defendant.
_____

**Kasubhai**, United States Magistrate Judge:

      Plaintiff Robyn N. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for disability insurance

benefits ("DIB") under the Social Security Act (the "Act"). This Court has jurisdiction to review

the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a

Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of

Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 19. For the reasons that follow, the

Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

///

_____

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-
government parties whose identification could affect Plaintiff's privacy.

Page 1 — OPINION AND ORDER

## PROCEDURAL BACKGROUND

Plaintiff filed her application for DIB in April 2018, alleging disability beginning February 15, 2016. Tr. 163–69.[2] Her claim was denied initially and upon reconsideration. Tr. 68–101. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in December 2019. Tr. 34–67; Tr. 114. On January 29, 2020, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 17–29. The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 39 years old on the initial alleged onset date. Tr. 68. She completed three years of college and has past relevant work as an account representative. Tr. 193. Plaintiff alleges disability due to post-traumatic stress disorder ("PTSD"), anxiety, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), and major depressive disorder. Tr. 68–69.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*,

---

[2] "Tr." citations are to the Administrative Record at ECF No. 17.

Page 2 — OPINION AND ORDER

486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations her impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since the alleged onset date. Tr. 19. At step two, the ALJ found Plaintiff had the following severe impairments: PTSD; anxiety; bipolar disorder; ADHD; major depressive disorder; carpal tunnel syndrome; asthma; and obesity. Tr. 20. At step three, the ALJ found Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. *Id.* Before proceeding to the fourth step, the ALJ assessed Plaintiff's RFC. The ALJ found Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b), with the following nonexertional limitations:

> The claimant can never crawl or climb ladders, ropes, or scaffolds. The claimant can frequently handle with the bilateral upper extremities. The claimant can have no concentrated exposure to airborne irritants. Due to mental impairments, the claimant; can apply commonsense understanding to carry out short and simple written or oral instructions – consistent with Level 2 reasoning that can be learned in 30 days or less; can have no more than occasional interactive contact with the

> public; can have no more than frequent interactive contact with co-
> workers or supervisors; and can engage in no group tasks.

Tr. 22.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 27. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite her impairments. Tr. 27–28. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 28.

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) failing to provide legally sufficient reasons to discount the medical opinion of her treating mental health provider, Mark Snider, NP; (2) failing to properly evaluate the opinions of non-examining agency psychologists, Bill Hennings, Ph.D. and Ben Kessler, Psy.D., and incorporate their opinions into Plaintiff's RFC; (3) improperly rejecting Plaintiff's subjective symptom testimony; and (4) improperly discounting lay witness testimony from Plaintiff's friend, Brittany G. Pl.'s Opening. Br. 4–5, ECF No. 18 ("Pl.'s Br."). The Commissioner concedes these errors were harmful, but nevertheless contends that the appropriate remedy is to remand this case to the ALJ for additional proceedings "because there are unresolved issues that must be evaluated, and the record does not clearly require a finding of disability." Def.'s Br. Requesting Remand 2, ECF No. 23 ("Def.'s Br.").

I.      **Summary of Erroneously Rejected Evidence**

A.      **Opinion of Mark Snider, NP**

Mark Snider, NP provided a mental residual functional capacity assessment. Tr. 825–828. In his assessment, Mr. Snider found Plaintiff had "severe" limitations in: the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and

workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and "moderately severe" in: the ability to carry out detailed instructions; the ability to work in coordination with others or in proximity to others without being distracted by them; the ability to interact with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in the work setting; and the ability to travel in unfamiliar places or use public transportation. *Id.* Mr. Snider's reasoning highlights Plaintiff's academic challenges, mood fluctuations caused by criticism, and emotional decompensation from "new, unexpected expectations[.]" Tr. 828.

### B.     Opinions of Bill Hennings, Ph.D., and Ben Kessler, Psy.D.

Bill Hennings, Ph.D., and Ben Kessler, Psy.D., limited Plaintiff to only "cursory" contact with the public and coworkers. Tr. 79, 99.

### C.     Plaintiff's Subjective Symptom Testimony

Plaintiff worked at Grubhub as a delivery driver during the relevant period. Tr. 42–43, 45. Plaintiff attended the University of Oregon four-and-a-half hours per week and was studying to achieve a degree in sociology during the relevant period. Tr. 48–49. Plaintiff's activities of daily living included: taking care of her daughter and her pets, cooking simple meals three to four times per week, doing laundry and general cleaning of the kitchen and living room, and taking out the garbage. Tr 204–06. Plaintiff testified that she experiences panic attacks occurring two to three times a week for three to thirty minutes. Tr. 57.

### D.     Lay Witness Testimony from Brittany G.

Plaintiff's friend, Brittany G., provided a letter stating that she has witnessed, on multiple occasions, Plaintiff becoming physically ill and vomiting in public from her impairments. Tr. 260.

Page 6 — OPINION AND ORDER

She also notes that Plaintiff has recently experienced trouble shopping in person and has begun using delivery services. *Id.* Furthermore, she states that Plaintiff had difficulties attending her classes due to having to see other students and participate in group projects. *Id.*

As noted, the Commissioner concedes the ALJ failed to supply legally sufficient reasons for rejecting this evidence.

## II.      Remedy

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an immediate award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)).

Page 7 — OPINION AND ORDER

The Commissioner does not argue that Plaintiff fails to satisfy the three prongs of the credit-as-true analysis and has accordingly waived any argument to the contrary. *See* Def.'s Br. 2–8. Instead, the Commissioner asserts that remand is appropriate because the "challenged medical opinions do not establish disability" and "[s]everal inconsistencies cast serious doubt on a finding of disability based on Plaintiff's symptom testimony." Def.'s Br. 2–8. The Court agrees.

### A.    Medical Opinions Create Serious Doubt that Plaintiff is Disabled

The Commissioner argues: (1) the opinion of Mark Snider, NP, lacks support in the medical record and is inconsistent with his own treatment notes and (2) although the Commissioner concedes error in the evaluation of the opinions of Bill Hennings, Ph.D., and Ben Kessler, Psy.D., by failing to include only "cursory" contact with the public or coworkers in Plaintiff's RFC, the opinions do not establish that Plaintiff is disabled, as there may be jobs that Plaintiff is capable of performing if her RFC limited her to only cursory contact with the public and coworkers. Def.'s Br. 6.  With respect to the opinion of Mr. Snider, his treatment notes do not fully support, and are inconsistent with his mental residual functional capacity assessment. Specifically, Mr. Snider provides a limited explanation for why he found Plaintiff had "severe" limitations in: the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and "moderately severe" in: the ability to carry out detailed instructions; the ability to work in coordination with others or in proximity to others without being distracted by them; the ability to interact with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in the work setting; and the ability to travel in unfamiliar places or use public transportation. Tr. 825–28.

Mr. Snider's limited reasoning highlights Plaintiff's academic challenges. However, Mr. Snider noted in his treatment notes that Plaintiff was consistently successfully performing in school. *See* Tr. 669, where Plaintiff states she has a 4.0 GPA; and Tr. 712, where Plaintiff reported passing all of her classes despite being stressed about her academic performance at a previous appointment. Additionally, Mr. Snider's treatment notes contain predominantly normal objective psychiatric findings throughout Plaintiff's treatment history. In particular, Mr. Snider found Plaintiff had normal judgment and thought content, and normal cognition and memory in every treatment note from April 2014 to July 2018. *See* Tr. 664–65; Tr. 666–67; Tr. 668–69; Tr. 669–70; Tr. 671–72; Tr. 672–73; Tr. 674–76; Tr. 677–79; Tr. 679–82; Tr. 684–87; Tr. 688–91; Tr. 692–94; Tr. 694–98; Tr. 700–02; Tr. 702–07; Tr. 707–09; Tr. 710–12; Tr. 712–14; and Tr. 714–17. Additionally, although Mr. Snider often found Plaintiff presented with some combination of agitated, anxious, or depressed mood, he also often noted that Plaintiff's mood was stable or had improved. For example, at an April 2014 appointment, he noted Plaintiff is "[d]oing ok for the most part. Having a down day today." Tr. 665. At an April 2016 appointment, he noted Plaintiff was "[d]oing well except for occasional anxiety." Tr. 669. In April of 2017, he noted Plaintiff was "doing pretty well in regards to her mental health" and her "[m]edications are effective for mood stabilization." Tr. 694. In March 2018, Mr. Snider reported that Plaintiff "is doing well at this point. Her moods tend to fluctuate depending on psychosocial stressors." Tr. 709. Mr. Snider's treatment notes contain some evidence that Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's symptoms, however, the inconsistencies in Mr. Snider's treatment notes and mental residual functional capacity assessment suggest Plaintiff's impairments are not as severe as Mr. Snider found in his assessment. Therefore, there is "serious doubt" that Plaintiff is disabled.

With respect to the opinions of Bill Hennings, Ph.D., and Ben Kessler, Psy.D., which limited Plaintiff to only "cursory" contact with the public and coworkers, the question whether

Plaintiff has the RFC to perform work if limited to only "cursory" contact, and whether significant jobs exist in the national economy that meet this RFC, remains unanswered. Therefore, there is "serious doubt" whether Plaintiff is disabled.

**B.      Inconsistencies in Plaintiff's Testimony Create Serious Doubt that Plaintiff is Disabled**

The Commissioner argues there are several inconsistencies between Plaintiff's allegations and the record as a whole that present serious doubt about her allegations of disability. Specifically, the Commissioner notes: (1) that Plaintiff worked during the relevant period, (2) Plaintiff attended the University of Oregon four-and-a-half hours per week and was studying to achieve a degree in sociology, (3) Plaintiff's activities of daily living included: caring for her daughter by herself, caring for pets, shopping in stores and by computer, doing laundry, cleaning her house, cooking simple meals, reading novels, writing in a journal, and painting rocks with her daughter occasionally, (4) Plaintiff's reports of symptoms are inconsistent, and (5) Plaintiff testified that her biggest problem was her difficulties with other people, but Plaintiff cannot show that she is incapable of performing a job with only cursory contact with the general public, such as her delivery job.  The Court agrees that inconsistencies in Plaintiff's subjective symptom testimony create serious doubt that Plaintiff is disabled.

During Plaintiff's hearing, she testified that she works as a delivery driver for Grubhub in two or two-and-a-half hour shifts three to four times per week, but would be unable to work full time because it is not offered by Grubhub. Tr. 42–43, 45. Plaintiff acknowledged that her delivery job requires brief conversations with restaurants to pick up the food and with the recipient of the delivery. Tr. 45. She notes that her daughter accompanies her and navigates for her. *Id.* From the testimony, it is unclear whether Plaintiff would be capable of performing a full-time delivery driver job, if one was offered.

With respect to Plaintiff's academic activities, the hearing testimony notes that Plaintiff was taking one class four-and-a-half hours per week. Tr. 48–49. She reported that she had stopped attending because there were too many students in the classroom, and it made her scared. Tr. 49. She reported that 50% of the classes she has taken have been administered online and that many of her teachers put the course materials online which enables her to do that work online. Tr. 44–45. Plaintiff's treatment record notes that on one occasion Plaintiff attended class in person, but felt uncomfortable and went to the student health center and was subsequently transported to the emergency room, where she was evaluated for elevated anxiety. Tr. 702–07. The record as a whole indicates that Plaintiff's medically determinable impairments could reasonably produce the symptoms alleged, namely, the difficulties Plaintiff describes in interacting with others and with academics generally. However, there is also evidence in the record that Plaintiff has performed well academically despite her alleged impairments. Specifically, Plaintiff reported to Mr. Snider at a June 2016 appointment that she had a 4.0 GPA and was stressed about a final exam, but otherwise doing well in terms of her mood. Tr. 669–670. In July 2017, Plaintiff reported to Mr. Snider that she was having academic problems and was attempting to increase her GPA by taking classes over the summer. Tr. 700–02. Despite reporting academic problems, Plaintiff reported in June 2018 that she had passed all of her classes. Tr. 712–714. It is unclear from the record how often Plaintiff's impairments prevent her from attending class in person and whether her lack of attendance impacts her academic performance.

With respect to Plaintiff's activities of daily living, she testified that she has her groceries delivered because she gets sick while grocery shopping. Tr. 56. She noted a specific example that occurred the prior week where she had an accident in the bathroom of the grocery store. *Id.* She notes that when she gets upset or nervous, she will get sick, including vomiting and diarrhea. *Id.* She stated: "It makes it really hard to, like, go places, because I'm afraid that something is going

Page 11 — OPINION AND ORDER

to happen in public." *Id.* She testified that she has experienced this while at school. *Id.*  In her

adult function report, she stated she shops mostly online, but physically enters a store once a week

to get fruit. Tr. 206. She stated she goes at night when no one is there so she can complete her

shopping within an hour. *Id.* With respect to other activities of daily living, Plaintiff reported she

takes care of her daughter and her pets, cooks simple meals three to four times per week, does

laundry and general cleaning of the kitchen and living room, and takes out the garbage. Tr 204–

06. However, Plaintiff also testified that her typical daily routine consists of her waking up, taking

her medications, and sitting, sometimes watching Netflix "because [she] can throw [herself] into

something. And before [she knows] it, the day is almost over." Tr. 56. Although Plaintiff's

activities of daily living support some degree of Plaintiff's alleged impairments, inconsistencies in

her testimony create serious doubt that Plaintiff is disabled.

Inconsistencies in Plaintiff's medical record also create serious doubt that Plaintiff is

disabled. Specifically, during her hearing she reported panic attacks occurring two to three times a

week for three to thirty minutes. Tr. 57. Although the record contains evidence of several severe

panic episodes, Plaintiff's treatment notes are mostly silent on regular panic attacks lasting three

to thirty minutes. *Compare* Tr. 287; Tr. 489–91; Tr. 508–14; Tr. 519–20, *with*, Tr. 664–65; Tr.

666–67; Tr. 668–69; Tr. 669–70; Tr. 671–72; Tr. 672–73; Tr. 674–76; Tr. 677–79; Tr. 679–82;

Tr. 684–87; Tr. 688–91; Tr. 692–94; Tr. 694–98; Tr. 700–02; Tr. 702–07; Tr. 707–09; Tr. 710–

12; Tr. 712–14; and Tr. 714–17. Mr. Snider's treatment note from November 2017 states her

symptoms include nervous/anxious behavior and panic, and that these symptoms occur most days.

Tr. 704. Furthermore, he states the severity of symptoms is severe, causing significant distress,

interfering with daily activities and are incapacitating. *Id.* However, the remaining treatment notes

from Mr. Snider make no mention of regular panic attacks. *See* Tr. 664–65; Tr. 666–67; Tr. 668–

69; Tr. 669–70; Tr. 671–72; Tr. 672–73; Tr. 674–76; Tr. 677–79; Tr. 679–82; Tr. 684–87; Tr.

688–91; Tr. 692–94; Tr. 694–98; Tr. 700–02; Tr. 707–09; Tr. 710–12; Tr. 712–14; and Tr. 714–17. The inconsistency between Plaintiff's hearing testimony and her medical record creates serious doubt that Plaintiff is disabled.

### C.    Lay Witness Testimony

The Commissioner agrees with Plaintiff's assertion that there was error, but does not specifically discuss the lay witness testimony beyond making "further evaluation of the lay witness evidence in Exhibits 5E and 17E" a condition of remand. Def.'s Br. 1–2. Plaintiff argues the ALJ erred by failing to provide legally sufficient reasons for rejecting the lay witness testimony provided by Brittany G. Pl.'s Br. 32. As the Commissioner notes, this issue should be addressed on remand.

Considering the record as a whole, the Court concludes that there is reason for serious doubt as to whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1020–21 (citations omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021). The Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). Here, the Court finds the record sufficiently ambiguous, making remanding for an immediate payment of benefits inappropriate. Accordingly, this case is remanded for further administrative proceedings to: (1) reevaluate the medical evidence, including the opinions of Mark Snider, NP, Bill Hennings, Ph.D., and Ben Kessler, Psy.D.; (2) reassess Plaintiff's residual functional capacity and subjective complaints; (3) further evaluate the lay witness evidence in Exhibits 5E and 17E; (4) continue

with the sequential evaluation process, as necessary; and (5) offer Plaintiff a hearing, take any further action necessary to complete the administrative record, and issue a new decision. S*ee Burrell v. Colvin*, 75 F.3d 1133, 1141 (9th Cir. 2014).

## CONCLUSION

For the reasons above, the Commissioner's decision was not based on substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 24th day of February 2022.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge